1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9  KENNETH E. MACE,                          Case No.  C07-5286BHS

10          Plaintiff,

11      v.                                   REPORT AND
                                            RECOMMENDATION
12  MICHAEL J. ASTRUE,
    Commissioner of Social Security,        Noted for May 2, 2008
13
            Defendant.
14

15

16      This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. §

17  636(b)(1)(B) and Local Magistrate Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W.

18  v. Weber, 423 U.S. 261 (1976).  The plaintiff, Kenneth Mace, brings this action pursuant to the provisions

19  of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a

20  partially favorable decision of the Commissioner of the Social Security Administration (the

21  Commissioner). This matter has been briefed by the parties.  The undersigned now submits the following

22  report, recommending that the Court affirm the administrative decision.

23      Plaintiff was born in 1958, and  he completed high school.  He has past work experience as a bar

24  manager, bartender, saw operator, and aviation electrical technician.  Plaintiff filed an application for

25  social security disability benefits on February 15, 2002, alleging inability to work since February 15,

26  2001, based on cough and syncope (Tr. 82).  After review by an administrative law judge ("ALJ") the

27  administration denied the application.  But, after the matter was reviewed by the court, the decision was

28  remanded for further review.

On January 24, 2006, the administrative Appeals Council vacated the prior ALJ's decision and sent the case back to the hearing level for further proceedings.  A new hearing was held on May 18, 2006. While the matter was pending, Plaintiff file another application for benefits on August 17, 2004.  This application was accelerated to the hearing level and considered by the administration in combination with his application of February 2002.

On June 21, 2006, the ALJ issued a partially favorable decision.  The ALJ found Plaintiff disabled and unable to perform substantial gainful activity between February 15, 2001 and February 1, 2006.  The ALJ found that Plaintiff had experienced medical improvement related to his ability to work, and as of February 1, 2006, was no longer entitled to disability benefits.  (Tr. 405-413).

Plaintiff filed the instant complaint with the court on or about June 7, 2007.  Plaintiff argues the following errors: (1) the ALJ failed to address Plaintiff's non-exertional limitations or fully develop the record; (2) the ALJ failed to properly assess Plaintiff's credibility; (3) the ALJ erred in concluding that Plaintiff's medical improvement was related to his ability to work; (4) the ALJ erred by not comparing the severity of Plaintiff's current impairments to the severity of the impairments when Plaintiff was most recently found disabled; (5) the ALJ erred by incorrectly assessing Plaintiff's residual functional capacity; and (6) the ALJ erred by relying on the medical expert's testimony.

## STANDARD OF REVIEW

The Commissioner's decision must be upheld if the ALJ applied the proper legal standard and the decision is supported by substantial evidence in the record.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, this Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984)

## STATUTORY AND REGULATORY FRAMEWORK

In determining whether an award of disability benefits should be terminated at some point, Social

Security regulations outline an eight-step sequential process:

*Evaluation steps.* To assure that disability reviews are carried out in a uniform manner, that decisions of continuing disability can be made in the most expeditious and administratively efficient way, and that any decisions to stop disability benefits are made objectively, neutrally and are fully documented, we will follow specific steps in reviewing the question of whether your disability continues. Our review may cease and benefits may be continued at any point if we determine there is sufficient evidence to find that you are still unable to engage in substantial gainful activity. The steps are:

(1) Are you engaging in substantial gainful activity? If you are (and any applicable trial work period has been completed), we will find disability to have ended (see paragraph (d)(5) of this section).

(2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1 of this subpart? If you do, your disability will be found to continue.

(3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)

(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1)-(4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to engage in substantial gainful activity in accordance with § 404.1561. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider one final step. Given the residual functional capacity assessment and considering your age, education and past work experience, can you do other work? If you can, disability will be found to have ended. If you cannot, disability will be found to continue.

20 C.F.R. § 404.1594(f).

In the instant case, at step one, the ALJ found that Plaintiff was not performing substantial gainful

activity (Tr. 406). At step two, the ALJ found that as of February 1, 2006, Plaintiff did not meet or equal the Listings (Tr. 410-411). At step three, the ALJ found significant medical improvement (Tr. 411). At step four, the ALJ found that Plaintiff's medical improvement was related to his ability to work (Tr. 411-412). The ALJ's findings at steps three and four made consideration of the exceptions at step five unnecessary. 20 C.F.R. § 404.1594(f)(5). At step six, the ALJ determined that Plaintiff had severe impairments that consisted of depressive disorder, history of syncopal episodes, obesity, probable obstructive sleep apnea, and chronic sinusitis (Tr. 410). The ALJ assessed Plaintiff's residual functional capacity as of February 1, 2006, and, at step seven, found that Plaintiff could not perform his past relevant work (Tr. 412). At step eight, the ALJ found Plaintiff could perform other work that exists in significant numbers in the national economy (Tr. 413).

After reviewing the matter, the undersigned finds the ALJ's decision is properly supported by substantial evidence and free of legal error.

## DISCUSSION

### A.   The ALJ's Finding Of Significant Medical Improvement Related To His Work Is Properly Supported By The Record

The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).  In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of  a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, the ALJ relied heavily on the medical record and plaintiff's medical history to make his step-three decision.  The ALJ specifically noted the first signs of medical improvement began in "late

2004" (Tr. 408).  At that time Plaintiff reported decreased irritability and depression along with a "mildly dysphoric" mood (Tr. 408, 519).   In February 2005 James Burke, PA-C, classified Plaintiff's depression as in "partial remission" and his "continuing depressive symptoms" were resulting from "continuing psycho-social stressors" (Tr. 408, 608). The ALJ also noted the lessened degrees of cognitive and social limitations opined by Bruce Eather, Ph.D., in September 2005,  than had been assessed in February 2004 by Terilee Wingate, Ph.D. (Tr. 408, 565, 575).  The ALJ noted that on October 26, 2005, Plaintiff stated his medication changes had improved his condition and recited a number of tangible improvements, a conclusion in which Mr. Burke concurred (Tr. 408, 411, 589).

The ALJ further noted reports of improvement on February 10, 2006 (Tr. 408, 410, 411, 582-585). This included the opinion of Bruce Graunke, Ph.D., that Plaintiff's "symptoms remain stable" (Tr. 585). It also included the opinion of Mr. Burke that Plaintiff was stable but the afternoon anxiety, reported by Plaintiff as "a feeling of restlessness[,]" was caused by a medication dose which was adjusted (Tr. 582). The ALJ also explained that Plaintiff's syncope, diabetes, and sleep problems "decreased dramatically in 2005 and 2006" (Tr. 408, 410).

In addition the above evidence, the ALJ compared the opinions of the two medical experts (Tr. 410, 411). The ALJ correctly noted and accepted Dr. Gordy's testimony that Plaintiff's condition was severe enough in February 2004 to meet a Listing (Tr. 410).  He then went on to discuss that Dr. Hart testified that, after reviewing the entire record, Plaintiff's condition in May 2006 only imposed mild restrictions and did not meet or equal any Listing (Tr. 411).  Dr. Hart explained that Plaintiff might have been "marked and severely clinically depressed at that point in time" in 2002 (Tr. 712). Dr. Hart went on to explain that by February 2006 the examinations revealed stability and improvement (Tr. 713).

Once medical improvement is shown, it is related to the ability to work if there is "an increase in your functional capacity to do basic work activities[.]" 20 C.F.R. § 404.1594(b)(3). As noted above, the ALJ found evidence of gradual improvement over several years that eventually reached stability by February 2006.  As further discussed below, beginning February 1, 2006, Plaintiff was able to lift and carry up to 10 pounds frequently and 20 pounds occasionally, stand and walk for about 2 hours in an 8 hour workday, sit for about 6 hours in an 8 hour workday, with occasional postural limitations because of obesity.  (Tr. 414).   By operation of the regulation, the ALJ reasonably concluded at step-four that the

medical improvement was related to Plaintiff's ability to work.

The court notes Plaintiff's discussion of evidence submitted to the administrative appeals council that was not brought to the ALJ's attention.  The evidence my indicate a worsening of Plaintiff's medical condition, possibly supporting a new application with a new onset date.  The evidence does not support a remand of the matter.  The reports do not relate back to the time period in which the ALJ determined that improvement occurred which is related to Plaintiff's ability to work.

### B.  The ALJ Properly Found Plaintiff not Entirely Credible

When a claimant has a  medically documented severe impairment that could reasonably be expected to produce some degree of the symptoms the claimant complains of, "the ALJ may reject the claimant's testimony regarding the severity of symptoms only if she makes specific findings stating clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281-1282 (9th Cir. 1996). The ALJ's findings must be properly supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" Bunnell v. Sullivan, 947 F.2d 341, 345-346 (9th Cir. 1991)(en banc).  An ALJ may reject a claimant's subjective complaints, if the claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  However, as further explained in Fair v. Bowen, supra, and Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a work environment where it might be impossible to rest periodically.

Here, the ALJ stated, "The claimant's statements are only credible to the extent that they may be interpreted to mean that he had pain and other functional limitations so severe as to preclude all work activity between February 15, 2001, and February 1, 2006."  (Tr. 413).  The medical record showing improvement in Plaintiff's condition supports the ALJ's finding.  The ALJ explained:

> Although the claimant alleges that he remains disabled and unable to work as a result of his impairments, I find that his allegations of total disability due to syncopal episodes, sleep apnea, sinusitis, and depression are only credible to the extent that they coincide with his disability beginning February 15, 2001, and extending through February 1, 2006.  In making this assessment, I have carefully considered the claimant's testimony with respect to his mental functioning, syncopal episodes, and fatigue.  However, the objective medical

evidence when considered as a whole is not fully consistent with the claimant's allegations. The claimant's most recent psychological evaluations show a clear improvement in his mental functioning and level of depression. Therefore, the claimant no longer meets or equaled the requirements of section 12.02(c) of the Listing of Impairments. Under these circumstances, if the impairment no longer meets or equals the same listing used to make the previous determination, it is presumed that the medical improvement was related to the claimant's ability to work (20 C.F.R. §404.1594(d)(1)(ii)). Accordingly, beginning on February 1, 2006, the medical improvement was related to his ability to work.

Tr. 411-412.

The ALJ properly referenced the medical record and its inconsistency with the Plaintiff's claims of total disability. If a claimant submits medical evidence of an underlying impairment, but testifies that he experiences pain (or other symptoms) at a higher level, the Commissioner may disbelieve that testimony. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).

### C. The ALJ's RFC Assessment Is Properly Supported And Free Of Legal Error

At step-six, the ALJ was required to determine Plaintiff's residual functional capacity a ("RFC")before continuing to steps seven and eight of the sequential evaluation process. "[R]esidual functional capacity" is "the maximum degree to which the individual retains the capacity for sustained performance of the physical- mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c) (emphasis added). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b). This is not a medical issue; the ALJ has the responsibility for determining Plaintiff's residual functional capacity. 20 C.F.R. §404.1546.

The ALJ's RFC finding sufficiently addressed the nonexertional limitations evidenced by the record. In addition to the lifting, standing, sitting limitations discussed above, the ALJ found specific postural limitations, including, Plaintiff's ability to climb; crawl; bend; crouch; deal with heights or machinery. The ALJ also found specific mental or non-exertional limitations, such as a limited ability to understand, remember, and carry out visually detailed tasks; travel in unfamiliar places; and use public transportation (Tr. 412).

The ALJ's RFC finding is properly supported. In addition to the medical evidence discussed

above with respect to Plaintiff's medical improvement, the ALJ relied on additional medical evidence to formulate Plaintiff's RFC.  The ALJ specifically stated the mental residual functional capacity is consistent with the testimony of the medical expert, Dr. Hart (Tr. 412).   The physical capacity findings are consistent with the opinion of Dr. Quint (Tr. 412).

### D. The ALJ's Step-Eight Determination Is Also Properly Supported And Free Of Legal Error

Plaintiff argues the ALJ erred when he relied on the Vocational Expert's testimony to find Plaintiff was capable of performing work in the national economy.

At this last step in the administrative process the burden of proof shifts to the Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that Plaintiff could perform in light of his age, education, work experience, and residual functional capacity.  *See* Tackett v. Apfel,180 F.3d 1094,1099 (9th Cir. 1999); Roberts v. Shalala, 66 F.3d 179, 184 (9th Civ. 1995).  In Tackett, the court noted "there are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." Id.

Here, the ALJ questioned the vocational expert at the hearing about Plaintiff's ability to perform certain types of work.  The found that Plaintiff could not return to his past relevant work as a saw operator, which is classified as a medium, skilled job (Tr. 412).  The vocational expert explained that Plaintiff would be limited to unskilled work activity.   The ALJ properly asked the vocational expert to assume a person of the same age, education, past work experience and RFC (as described above), and the vocational expert stated that such a person could perform work as, surveillance system monitor, order clerk, and telephone solicitor.

Plaintiff's argument that the ALJ erred when he relied on the vocational expert's testimony is premised on the contention that the ALJ failed to properly assess the medical evidence regarding improvement in Plaintiff's condition, as well as Plaintiff's credibility, and RFC.  As explained above, the court does not find any error in the ALJ's assessment of the case, and thus, the hypothetical posed to the vocational expert accurately reflected Plaintiff's capabilities.  The ALJ did not err when he relied on the vocational expert's testimony at step-eight in the administrative process utilized in this case.

1

### **CONCLUSION**

2       The ALJ's decision is supported by substantial evidence in the record at each of the eight steps in

3   the administrative process utilized in this type of case..  Therefore, the Court should AFFIRM the

4   administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

5   Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See*

6   *also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of

7   appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the

8   clerk is directed to set the matter for consideration on **May 2, 2008**, as noted in the caption.

9       DATED this 8th day of April, 2008.

10

11                          */s/ J. Kelley Arnold*
                            J. Kelley Arnold
12                          U.S. Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 9